SWINNEY *v.* THE FT. WAYNE, MUNCIE AND CINCINNATI
R. R. Co.

RAILROAD.—*Statutory Construction.*—*Statutes in Pari Materia.*—The act of May
11th, 1852, 1 R. S. 1876, p. 696, providing for the incorporation of rail-

Swinney v. The Ft. Wayne, Muncie and Cincinnati R. R. Co.

road companies, and the act of June 18th, 1852, 2 R. S. 1876, p. 32, establishing a code of civil procedure, were passed at the same session of the Legislature, and relate to the same subject-matter, and are to be construed *in pari materia*, and treated as one; and, if there is an irreconcilable conflict between these two acts, the one relating to civil procedure must prevail, being the later expression of the legislative will.

SAME.—*Statute Construed.—Practice.—Award of Appraisers.—Exception.*— Under section 15 of the act of May 11th, 1852, *supra*, if the exceptions to the award of the appraisers, appointed to assess damages for appropriating lands for the use of a railroad company, be filed within ten days after the award has been filed in the clerk's office, an appeal from such award is thereby effected; or, if the exceptions are filed after the expiration of the ten days, and the appellee does not take advantage of the delay at the first opportunity, the appeal would be effected.

SAME.—*Amending Exceptions.*—Under section 17 of this act, and sections 99 and 697 of the code of procedure, after having effected the appeal from the award of the appraisers, the case stands for amendments to the exceptions, such as filing additional exceptions, by leave of court, and for further proceedings as in other actions.

SAME.—*Practice.—Regularity of Proceedings.—Adequacy of Damages.*—Where the exceptions go only to the regularity of the proceedings, and are sustained, it is the duty of the court to order a new appraisement; if not sustained, or if the party chooses to waive all questions as to the regularity of the proceedings, he may then present the questions as to the adequacy of the damages.

SAME.—*Practice on Appeal.— What Questions may be Presented.*—The provision in section 15 of the act, that "the subsequent proceedings on the appeal shall only affect the amount of compensation to be allowed," must be construed to mean the proceedings subsequent to the establishment of the regularity of the appraisement. WORDEN, J., dissented.

SAME.—*Practice.—Offer to Purchase before Commencing Proceedings to Appropriate Land.*—It is not necessary for the company to offer to purchase the land before commencing proceedings to appropriate the same.

SAME.—*Appropriation by one Company for Use of Another.*—A railroad company has no authority to appropriate land for the use of another company; but has the right to judge for itself how much it needs.

SAME.—*Assessment of Damages.—Injury from Fire.*—Under that provision of section 15 of the act, which enacts, that the appraisers "shall consider the injury which such owner may sustain by reason of such railroad," danger of fire from the locomotives of the company is an injury within the meaning of the statute.

SAME.—*Award.— Waiver.*—By filing exceptions to an award, a party waives any objection he may have had to proof of service of notice to appropriate lands.

SAME.—*Appropriation of Lands by one Railroad Company for Benefit of other Companies.*—There is no authority of law for several railroad companies

.to agree, that one of their number shall proceed to appropriate lands for the purpose of afterward dividing it for the benefit of all. Each company must proceed for itself.

SAME.—*Notice of Appropriation.*—The delivery of the act of appropriation to the owner of the land, or guardian, is the first notice required by the statute; and this must be done before the appointment of the appraisers.

SAME.—*Appointment of Appraisers.—Warrant under which Appraisers Act.*— The application to the court or judge to appoint appraisers need not be in writing, but the warrant under which the appraisers act must be in writing.

From the Whitley Circuit Court.

*L. M. Ninde* and *J. A. Fay*, for appellant.

*W. H. H. Miller, J. Brackenridge, W. H. Coombs, J. Morris* and *R. C. Bell*, for appellee.

BIDDLE, C. J.—Proceedings commenced in the Allen Circuit Court, by the appellee, to appropriate certain lands belonging to the appellant, for railroad purposes, under " An act to provide for the incorporation of railroad companies," approved May 11th, 1852. 1 R. S. 1876, p. 696.

Sections 14 and 15 of the act are as follows:

" Sec. 14.    In case any company formed under this act, is unable to agree for the purchase of any real estate, in any county, required for the construction of the track, turn-outs, and water stations, it shall have the right to acquire the title to the same in the manner and by the special proceedings prescribed in this act.

" Sec. 15.    Such company is hereby authorized to enter upon any land for the purpose of examining and surveying its railroad line, and may appropriate so much thereof as may be deemed necessary for its railroad, including necessary side-tracks and water stations, materials for constructing, except timber, a right of way over adjacent lands, sufficient to enable such company to construct and repair its road, and a right to conduct water by aqueducts, and the right of making proper drains.    The corporation shall forthwith deposit with the clerk of the circuit or other court of record of the county where the land lies,

a description of the rights and interests intended to be appropriated, and such land, rights and interests shall belong to such company, to use for the purpose specified, by making or tendering payment as hereinafter provided. The corporation may, by its directors, purchase any such lands, materials, right of way, or interest of the owner of said land; or, in case the same is owned by a person insane or an infant, at a price to be agreed upon by the regularly constituted guardian or parent of said insane person or infant, if the same shall be appraised by the court in which the description aforesaid shall be filed, and on such agreement and approval, the owner, guardian, or parent, as the case may be, shall convey the said premises, so purchased, in fee simple or otherwise, as the parties may agree, to such railroad company; and the deed, when made, shall be deemed valid in law. If the corporation shall not agree with the owner of the land, or with his guardian, if the owner is incapable of contracting touching the damages sustained by such appropriation, such corporation shall deliver to such owner or guardian, if within the county, a copy of such instrument of appropriation. If the owner or his guardian, in case such owner is incapable of contracting, be unknown or do not reside within the county, such corporation shall publish, in some newspaper of general circulation in the county, for the term of three weeks, an advertisement, reciting the substance of such instrument of appropriation. Upon fixing [filing?] such act of appropriation and delivery of such copy, on making such publication, the circuit court or other court of record in the county where the land lies, or any judge thereof in vacation, upon the application of either party, shall appoint by warrant, three disinterested freeholders of such county to appraise the damages which the owner of the land may sustain by such appropriation; such appraisers shall be duly sworn; they shall consider the injury which such owner may sustain by reason of such railroad, and shall forthwith return their assessment of damages

to the clerk of such court, setting forth the value of the property taken, or injury done to the property, which they assess to the owner, or owners, separately, to be by him filed and recorded; and thereupon such corporation shall pay to said clerk the amount thus assessed, or tender the same to the party in whose favor the damages are awarded or assessed; and on making payment of [or] tender thereof, in the manner herein required, it shall be lawful for such corporation to hold the interests in such lands or materials so appropriated, and the privilege of using any materials on said roadway within fifty feet on each side of the centre of such roadway, for the uses aforesaid. The cost of such award shall be paid by such company; and on notice by any party interested and showing said proceedings, the court may order payment thereof, and enforce such payment by execution. The award of said arbitrators may be reviewed by the circuit court or other court in which such proceedings may be had, on written exceptions filed by either party in the clerk's office, within ten days after the filing of such award, and the court shall take such order therein as right and justice may require, by ordering a new appraisement, on good cause shown. *Provided*, That notwithstanding such appeal, such company may take possession of the property therein described, as aforesaid, and the subsequent proceedings on the appeal shall only affect the amount of compensation to be allowed; if, prior to the assessment, the corporation shall tender to such owner, or his guardian, if be unable to contract, an amount equal to the award afterwards made, exclusive of costs, the costs of arbitration shall be paid equally, by such company and such owner or guardian."

The instrument of appropriation is as follows:

" The Fort Wayne, Muncie & Cincinnati Railway Company, a corporation organized under the laws of the State of Indiana, do hereby signify the desire and intention of

said company to enter upon, use, hold and appropriate so much of the west half of section ten (10), township thirty (30) north, of range twelve (12) east, situated in Allen county, Indiana, and as is deemed necessary for said railroad for its roadway, side-tracks and water stations and connections, described as follows, to wit:"

Here the tract of land intended to be appropriated is particularly described, and said to contain twelve acres and twenty-eight hundredths of an acre.

At what date the instrument of appropriation was filed with the clerk does not appear, but it was filed before the appointment of the appraisers. On the presentation to the Allen Circuit Court of the instrument of appropriation and affidavit of service, that court, on the 23d day of June, 1870, in open court, appointed three appraisers as contemplated by section 15 of the act. On the 29th day of the same month, the appraisers returned into court their award, assessing the damages at two thousand dollars. On the 16th day of July, 1870, the railroad company paid into court the amount of the damages assessed.

Without showing the previous filing of any exceptions, the record shows, that on the 23d day of November, 1870, the parties appeared, and the plaintiff moved to strike out the exceptions of the defendant to the award.

On the 1st day of February, 1871, this motion was sustained in part and overruled in part, and the defendant filed his amended exceptions, as the record states.

We find in the record, first, an amended second exception, and then a series of exceptions numbered from one to ten, inclusive. Then follow a third and fourth amended exceptions.

The defendant then withdrew the ninth and tenth exceptions, and the plaintiff filed an answer to the third exception.

A demurrer was filed to the answer, which was sustained.

The plaintiff then filed a general denial of all the exceptions remaining in the record.

Next, and on the 8th day of July, 1871, occurs this entry: " Come now the parties, and it is ordered by the court, that all previous entries setting forth the rulings of the court upon exceptions filed herein, and on all questions relating thereto, be set aside; and the court does now here overrule the motion to strike out, and the demurrer filed the following exceptions: Nos. 1, 5, 6 and 7; and does overrule the motion to strike out and sustain the demurrer to the following exceptions, viz., 2, 3, 4 and 8, to which ruling, in overruling and sustaining said motions and demurrers, the parties respectively except."

At this stage of the case, the venue was changed, first from the judge, and then from Allen to Whitley county.

Next, by leave of the court, the defendant filed an amended 2d exception; also a series of exceptions, numbered from 1 to 10; and also amended 3d and 4th exceptions.

On motion, the court struck out the 1st, 2d, 3d, 4th, 7th 9th and 10th original, and the 2d, 3d and 4th amended, exceptions, and refused to strike out the 5th, 6th and 8th exceptions. The exceptions which were finally acted upon are as follows:

"1. That said railway company did not, prior to filing her application in the clerk's office of this court, on the 20th of June, 1870, to appropriate certain lands therein mentioned, belonging to said Swinney, make any offer, proposition or effort to purchase said lands or any part thereof.

"2. That the amount of land, $12\frac{28}{100}$ acres, sought to be appropriated, is not necessary for said road, and the purposes named in said application.

"3. That a part of said lands, so sought to be appropriated, is desired to make a branch road, leading to Chicago, *via* the Pittsburgh, Ft. Wayne and Chicago Railroad, and not to the city of Fort Wayne.

"4.   That a part of the said land, so sought to be appropriated, is intended to be used for a track for the Grand Rapids Railroad.

"5.   That the said appropriation will cut off about forty acres of land of the said Swinney, from the balance of his farm, separating it therefrom by an embankment seven feet in height, and this circumstance was not taken into consideration by said commissioners in fixing the damages, and the injury the said Swinney would sustain by the construction of said road, and the appropriation of said ground.

"6.   That the appropriation of said premises, and construction of said road as proposed, would require said Swinney to build two lines of fence the whole distance of said road, which matter the commissioners did not take into consideration when making their estimate of damages and injury the said Swinney would sustain.

"7.   That the said Swinney would be liable to sustain injury and damages by fire, communicated by engines running on said road, which matter the said commissioners did not take into consideration in estimating the damages and injury the said Swinney would sustain by the construction of said road as aforesaid.

"8.   That the said commissioners, in making their estimate of damages, overlooked many important matters connected therewith, and that said estimate of $2,000 is greatly below the value of said land sought to be appropriated, and the injury the said Swinney would sustain by said appropriation and the construction of said road.

"9.   That the proof of service of the notice of application of said railway company to appropriate said land, on said Swinney, did not authorize the appointment of said commissioners to fix the damages and injury the said Swinney would sustain by the appropriation of said land and the construction of said road.

"10.   That, at the time of filing said application of appropriation, the Grand Rapids and Indiana Railroad

Company, the Ft. Wayne, Jackson and Saginaw Railroad Company had entered into an agreement with The Ft. Wayne, Muncie and Cincinnati Railroad Company, wherein it was agreed by and between them, that the said plaintiff should file their application to appropriate said land for her own benefit; that all said parties would share equally in the expense and cost of said appropriation, and should have an equal interest in said land thus appropriated for the operation of their respective roads, of the parts of land occupied by their respective roads; that, in pursuance of said agreement, the plaintiff filed her articles of appropriation, and instituted their said proceedings to appropriate for her own benefit, but in fact for the benefit of said other roads as well; that said other roads have an equal interest in said lands by virtue of said agreement; that the object in appropriating the tract of land was to secure the land wanted by said other roads for them; that the lands needed by said plaintiff for her said road did not exceed the one-third of said land, as thus sought to be appropriated; the other two-thirds thereof being wanted for said other two roads, under and by virtue of said agreement between said plaintiff and said other roads, and on whose account it was sought to be appropriated, and not otherwise."

The third and fourth amended exceptions, rejected, are as follows:

" 3.   For amended third exception, said defendant says, that, prior to the filing of any map of the route of said road over said land, and the instrument of appropriation, the said Ft. Wayne, Muncie and Cincinnati Railroad Company entered into an agreement with the Junction Cincinnati Railroad Company, leasing the said former road to the latter, contrary to said company's undertaking, among other things, to complete said road and provide the right of way, including the right of way over said land; that the board of directors of said road never made any order for the appropriation of said land; that the filing of said

instrument of appropriation, and said proceedings of appropriation, were done and caused in and under and by the direction of the officers of said Junction road, and not by the officers of said Muncie Road. Wherefore," etc.

" 4. For fourth amended exception, said defendant says, that the said railroad company made no application in writing to the said circuit court, or to the Hon. Robert Lowrey, for the appointment of appraisers to assess the damages of said Swinney, in consequence of said appropriation; that said defendant had no notice of said appli- .cation to appoint said appraisers, nor of the meeting of said appraisers to appraise said damages, who were at- .tended by the attorneys of the said Junction Company, Messrs. Coombs and Miller, with whom said appraisers consulted on the question of said damages; that said defendant had a right to be present at the meeting of said appraisers to appraise said damages, and to be heard therein, but did not. Said proceedings were purposely conducted by said attorneys, that said defendants should not know when said appraisers met or were appointed; and that, in consequence, he was prevented from attend- .ing to the right or authority of said company to have appraisers appointed, and from procuring a proper assessment of said damages. Wherefore," etc.

The second amended exception, filed by the appellant by leave of the court, is so essentially the same as the above tenth exception that we do not set it out. An eleventh amended exception, which sets up the insufficiency of the damages assessed, was also rejected on motion, and an exception reserved.

A jury was waived, and the case tried by the court upon the issues formed by the 5th, 6th and 8th exceptions; finding for the appellant for thirty-four hundred and fifty-seven dollars. Over a motion for a new trial by the appellant, and exceptions reserved, the court rendered judgment on the finding. Appeal.

Assignments of error are made in this court upon the questions reserved in the record.

It is contended, on behalf of the appellee, that, under the statute, the appellant can file no exceptions to the award of the appraisers, except such as question the adequacy of the damages; that such exceptions must be filed in the clerk's office within ten days after the filing of such award; and that, after the expiration of the ten days, he can not file additional exceptions, nor have leave to amend exceptions already filed.

On behalf of the appellant, it is contended, that matters of law or fact, or both, may be filed to the award within the ten days after the filing of the award; and that, after the expiration of the ten days, the appellant may, on leave of the court, file additional exceptions or amendments to those already filed; and that issues of law and fact may be made up and tried, and proceedings had, as in other actions

These opposite views of the parties present the main controversy in the case.

As stated in the premises of this opinion, the appropriation of the land in this case is sought to be maintained under sections 14 and 15 of the act approved May 11th, 1852. Section 16 of the same act provides for the disposition of the amount assessed as damages, when there are adverse or conflicting claims to the money.

Section 17 is as follows:

"Sec. 17. The court shall appoint some competent attorney to appear for and protect the rights of any party in interest who is unknown, or whose residence is unknown, and who has not appeared in the proceedings by an attorney or agent; the court shall also have power at any time to amend any defect or informality in any of the special proceedings authorized by this act, as may be necessary, or to cause new parties to be added, and to direct such further notice to be given to any party in interest, as it deems proper, and also to appoint other com-

missioners in the place of any who shall die, or refuse or neglect, or are unable to serve, or who may leave or be absent from the State." 1 R. S. 1876, p. 705.

Section 99 of the act establishing our code of procedure, approved June 18th, 1852, subsequently to the approval of the act under which the appropriation of the land is sought, enacts as follows:

"Sec. 99. The court may at any time, in its discretion, and upon such terms as may be deemed proper, for the furtherance of justice, direct the name of any party to be added or struck out, a mistake in name, description, or legal effect, or in any other respect, to be corrected, any material allegation to be inserted, struck out or modified, to conform the pleadings to the facts proved, when the amendment does not substantially change the claim or defence. The court may also in its discretion allow a party to file his pleadings after the time limited therefor; and shall relieve a party from a judgment taken against him, through his mistake, inadvertence, surprise or excusable neglect, and supply an omission in any proceedings on complaint or motion filed within two years." 2 R. S. 1876, p. 82.

Section 697 of the code of procedure touching the writ of assessment of damages, by which any person, corporation, company, railroad or turnpike, as a work of public utility, may appropriate lands for such purpose for their private use, provides as follows:

"Sec. 697. Any defendant may appear and traverse any material fact therein stated in the inquest, or he may plead or show any valid matter in bar of the right of the plaintiff to have the benefit of such writ, and issues of law and of fact may be made up and tried, and the court may adjudge costs therein and proceedings had as in other actions." 2 R. S. 1876, p. 285.

The two acts, from which the above sections are quoted, were passed at the same session of the Legislature, and relate to the same subject-matter. In the first case arising

under them in this court, they were construed *in pari materia*, and treated as one enactment. *McMahon* v. *The Cincinnati and Chicago Short Line R. R. Co.*, 5 Ind. 413. And this case has been followed to the present time. *Marion and Mississinewa, etc., R. R. Co.* v. *Ward*, 9 Ind. 123; *The Cincinnati and Chicago R. R. Co.* v. *McFarland*, 22 Ind. 459; *The White Water Valley R. R. Co.* v. *McClure*, 29 Ind. 536; *The Louisville, etc., R. W. Co.* v. *Dryden*, 39 Ind. 393.

Should there be an irreconcilable conflict between these two statutes, the code of procedure, which is the later expression of the Legislature, would prevail against the former.

With section 17 of the act under which these proceedings are had, which enacts, that "the court shall also have power at any time to amend any defect or informality in any of the special proceedings authorized by this act, as may be necessary;" also, with the liberal discretion granted to the court by section 99, *supra*, to allow amendments, or allow the parties to file pleadings after the time limited therefor, with the provisions of section 697, which, in cases under a writ of assessment, enacts, that issues of law and fact may be made up and tried, and proceedings had, as in other actions, both of which latter sections are subsequent enactments to the former; and, with the numerous decisions of this court construing these two acts *in pari materia*, and as one enactment; with these all before us, the construction of the statute in the case we are considering does not seem difficult. We hold, that, when the appellant filed his exceptions within ten days after the award had been filed in the clerk's office, he had effected his appeal from the award; or, if he had filed them after the expiration of the ten days, and the appellee had not taken advantage of the delay at the first opportunity, he would also have effected his appeal; that, having thus effected his appeal from the award, the case stood for amendments to the exceptions,

or filing additional exceptions by leave of the court, and for further proceedings as in other actions. It would be an incongruity, in our judgment, to suppose that the Legislature meant to adopt any other method of procedure by exceptions than that provided for by the general code, and so well established in practice.

If the exceptions filed within ten days after the filing of the instrument of appropriation go only to the regularity of the proceeding, and should be sustained, it would be the duty of the court to order a new appraisement; if such exceptions were not sustained, the parties might still present the issue of the adequacy of the damages, and take a trial by jury, if they desired it; or they might waive exceptions to the regularity of the appropriation, and take their jury trial as to the damages at once, upon the proper issue joined. Should a new appraisement be granted by the court, when returned, it will be open to the same proceeding as a first one would be. The provision, that " the subsequent proceedings on the appeal shall only affect the amount of compensation to be allowed," must be construed to mean the proceedings subsequent to the establishment of the regularity of the appropriation; otherwise the regularity of the appropriation could not be questioned at all, and such a construction would be incompatible with justice.

We think the court did not err in rejecting the first exception to the award. It is not necessary that the appellee should have offered to purchase the land before commencing the proceedings to appropriate it. There are decisions in other States, however, which hold such an exception good; but, upon examination, we find that they rest upon statutes which allow the appropriation to be made by a legal proceeding only upon the refusal of the land-owner to convey upon application of the company desiring to obtain the lands.

And we think the court did not err in rejecting the second exception. A railroad company has the right to ap-

propriate as much land as is fairly necessary for its purposes. The language of the statute is, such company may enter upon the land, "and may appropriate so much thereof as is deemed necessary for its railroad," etc., and the company has the right to be the judge of how much is necessary for its own purposes.

The court erred in rejecting the third exception. There is no authority in the act for one railroad company to appropriate land for the use of another railroad company.

For the same reason, the court erred in rejecting the fourth exception.

The seventh exception was improperly rejected. The statute provides, that the appraisers "shall consider the injury which such owner may sustain by reason of such railroad;" and we think that danger from the fire of the locomotives or engines of the railroad company is an injury fairly within the meaning of the statute.

The court did not err in rejecting the ninth exception. The record does not show us that the appellant made any objection to the service of notice upon him before he filed his exceptions to the award. If at any time he might have objected to such notice, it was waived by filing his exceptions and appearing to the case.

The tenth exception was improperly rejected. There is no authority of law for several railroad companies to agree that one of their number shall proceed to appropriate land, for the purpose of afterwards dividing it for the benefit of all. Each company must proceed for itself.

And for the same reasons, the third amended exception should not have been rejected.

The fourth amended exception was properly rejected. The delivery of the act of the appropriation to the owner of the land or guardian is the first notice necessary by the statute, which must be done before the appraisers are appointed by the court or judge. This will enable the owner of the land to take care of his rights. Nor is it necessary that the application to the court or judge to

appoint appraisers should be in writing; but the warrant under which the appraisers act must be in writing.

The second amended exception, being in principle the same as the tenth exception, was also improperly rejected.

The additional exception, No. eleven, ought not to have been rejected, but its rejection was harmless, because it presented the same question, only more fully, namely, the inadequacy of the damages, as that presented by the 5th, 6th and 8th exceptions, upon which the case was tried; and the same evidence could have been properly admitted under either.

The construction which we have thus given to the statute is in harmony with the following authorities, although none of the cases are directly in point. *Mc-Mahon* v. *The Cincinnati, etc., R. R. Co.*, 5 Ind. 413; *The Newcastle and Richmond R. R. Co.* v. *Brumback*, 5 Ind. 543; *Marion and Mississinewa Valley R. R. Co.* v. *Ward*, 9 Ind. 123; *The Indiana Central R. W. Co.* v. *Boden*, 10 Ind. 96; *Evansville, Indianapolis and Cleveland Straight Line R. R. Co.* v. *Fitzpatrick*, 10 Ind. 120; *Wood* v. *Wilson*, 12 Ind. 657; *The Cincinnati and Chicago R. R. Co.* v. *McFarland*, 22 Ind. 459; *The White Water Valley R. R. Co.* v. *Mc-Clure*, 29 Ind. 536; *Ney* v. *Swinney*, 36 Ind. 454; *Grand Rapids and Indiana R. R. Co.* v. *Horn*, 41 Ind. 479; *The Indianapolis and St. Louis R. R. Co.* v. *Smythe*, 45 Ind. 322; *Larsh* v. *Test*, 48 Ind. 130; *The Logansport, Crawfordsville and Southwestern R. W. Co.* v. *Buchanan*, 52 Ind. 163; *The Baltimore, Pittsburgh and Chicago R. R. Co.* v. *Lansing*, 52 Ind. 229; *The Indianapolis and Vincennes R. R. Co.* v. *Newsom*, 54 Ind. 121; *The Louisville, N. A. & St. Louis Air Line R. W. Co.* v. *Dryden*, 39 Ind. 393.

We have not derived much advantage from the decisions of the courts in other States, because our statute is, in several respects, different from any other we have found; yet all uphold the general principles which we have endeavored to follow. The following cases may be

consulted with advantage: *The Chicago and Michigan Lake Shore R. R. Co.* v. *Sanford*, 23 Mich. 418; *Henry* v. *The Dubuque & Pacific R. R. Co.*, 10 Iowa, 540; *Hannibal & St. Joseph R. R. Co.* v. *Muder*, 49. Missouri, 165; *Ells* v. *Pacific Railroad*, 51 Missouri, 200.

The judgment is reversed, at the costs of the appellee, and the cause remanded for proceedings according to this decision.

WORDEN, J., dissents from so much of the foregoing opinion as holds, that, on such appeal, any question can be considered except the amount of compensation to be allowed.